**GEORGIA–PACIFIC CORPORATION,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

**No. 17400.**

United States Court of Appeals
Fifth Circuit.

Feb. 27, 1959.

---

[1]. Formerly The Shotwell Manufacturing Company.

162

C. Baxter Jones, Jr., Mac Asbill, Atlanta, Ga., J. J. Willingham, James M. Hull, Augusta, Ga., Hull, Willingham, Towill & Norman, Augusta, Ga., Sutherland, Asbill & Brennan, Atlanta, Ga., of counsel for appellant.

C. Guy Tadlock, Grant W. Wiprud, Joseph F. Goetten, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., William C. Calhoun, U. S. Atty., Augusta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

This is another of the many cases in which, hewing to the line and letting the chips fall where they may, the court, deciding now for the government and now for the taxpayer, according to the facts of the particular case, is called upon to apply the controlling principle of what is usually referred to as the Kimbell-

Diamond doctrine.[1] This succinctly stated is that when stock in a corporation is purchased for the purpose and with the intent of acquiring its underlying assets and that purpose continues until the assets are taken over, no independent significance taxwise attaches to the several steps of a multiple step transaction. The final step is, therefore, viewed not as independent of the stock purchase but simply as one of the steps in a unitary transaction, the purchase of assets.

The importance taxwise of this principle is that if these steps taken together are viewed as a single purchase transaction, the acquiring corporation has a cost base in the assets of the acquired corporation based not upon their cost to the seller but upon the price paid for them by the purchaser.

The essence of the doctrine of these cases, in short, is that tax significance attaches not to the separate steps after the first one but to the transaction as a whole, each step in which is viewed as an integral part of a single transaction, the purchase of assets. The cases, therefore, make it clear that the particular form of the last step, by which the assets are finally taken over, or what would be its tax effect if it were viewed independently and not as an integral part of the purchase transaction, is wholly immaterial. The Kimbell-Diamond doctrine has been applied in numerous cases [2] in which the final step, viewed independently, has taken such various forms as a taxable liquidation, a nontaxable liquidation, a reorganization, a statutory merger, and a dissolution during the consolidated return period. Nor do the decisions make a distinction between taking over the assets directly and taking them over through subsidiaries.

The case was tried to a jury on evidence consisting of stipulated facts supplemented by the testimony of witnesses who had been officials of the taxpayer corporation during the period in question. While, because of the repetitious nature of the examination and cross examination of plaintiff's witnesses, the record on casual view may appear to be extensive and diffuse, the statement of the occurrences giving rise to the issue at the trial is, as shown in the margin,[3] really brief and simple.

1. Kimbell-Diamond Milling Co. v. C. I. R., 14 T.C. 74, affirmed per curiam, 5 Cir., 187 F.2d 718; certiorari denied 342 U.S. 827, 72 S.Ct. 50, 96 L.Ed. 626. Cf. Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981.

2. Kanawha Gas & Utilities Co. v. Commissioner, 5 Cir., 214 F.2d 685; Commissioner of Internal Revenue v. Ashland Oil & Refining Co., 6 Cir., 99 F.2d 588; Helvering v. Security Savings & Commercial Bank, 4 Cir., 72 F.2d 874; Prairie Oil & Gas Co. v. Motter, 10 Cir., 66 F.2d 309; Georgia Properties Co. v. Henslee, D.C.M.D.Tenn., 138 F. Supp. 587; Estate of James F. Suter, 29 T.C. 244; Kimbell-Diamond Milling Co., note 1, supra.

3. These are:
During Oct., 1951, plaintiff's officials negotiated, and on Nov. 9, 1951, plaintiff executed, agreements with various individuals for plaintiff to acquire, directly and indirectly, substantially all of the outstanding stock of C. D. Johnson Lumber Corporation, herein usually called "Johnson".

In negotiating the price for the stock, the parties placed current values on the underlying Johnson assets which included about one billion board feet of standing timber. Except for the timber, the current values were substantially the same as the original cost at which Johnson carried the assets on its books. The current value placed on the timber was about 8.6 million dollars ($9.00 per thousand feet). Johnson had purchased the greater part of the timber during the 1920's and carried the timber on its books at its original cost of 2.6 million dollars ($2.50 per thousand feet).

By January 7, 1952, pursuant to its agreements, plaintiff had acquired direct and indirect ownership of substantially all of the outstanding Johnson stock. Plaintiff acquired the stock directly except for a block owned by Pacific Spruce Timber Co., herein usually called "Spruce". Approximately 210,000 shares of Johnson stock were outstanding, of which Spruce owned about 40%. The price paid by plaintiff for Johnson stock to persons

There was no controversy below between the government and the taxpayer over the principle to be applied, none over what actually occurred from the purchase of the stock until the statutory merger. The sole controversy was over whether, as plaintiff contended, the stipulated and undisputed facts were such that taxpayer was entitled to a cost base for the timber, the sale of part of which brought about the tax controversy in this case, measured by the value placed upon the timber when the stock purchase was made, or whether, as the government contended, the evidence of a continuing purpose was lacking and, since the final step was the statutory free merger, the base was the greatly less cost of the timber to the Johnson Corporation, the seller, when it first acquired it.

Plaintiff contended below that there was no dispute as to, or conflict in, the facts, and this being so, that the question whether this was a single transaction of multiple steps or a series of independent transactions, was settled by them beyond question in its favor.

The government also contended below that there was no real issue of fact in the case as to the occurrences described in the evidence, but it insisted that, as matter of law, the last transaction, the statutory merger, was not a component step in a multiple step transaction but an independent transaction, which established the base as contended for by the commissioner. The contention, in short, of the government at the trial was that under the Kimbell-Diamond doctrine, the merger by which the Johnson assets were taken over by plaintiff, fixed plaintiff's tax base in the timber, and that it was, therefore, limited to Johnson's very much lower cost because, under the facts of the case and particularly the elapsed time between the purchase of the stock and the merger, taxpayer's dealings could not be considered as a single transaction of multiple steps unless plaintiff also had both an original and a continuing intention to take over the assets by the method of statutory merger ultimately used in this case and that there was no evidence that this was so.

Plaintiff, on its part, contended below: that, under the undisputed facts, the stock purchase and the merger must be viewed as steps in a single purchase of assets transaction in which plaintiff purchased the stock to get the timber, intending, when negotiating and effecting the purchase of the Johnson stock, to get rid of the corporation and take over its assets in some appropriate way; that it continuously thereafter held that intention and pursuant thereto effected the statutory merger; and that, therefore, its tax base in the timber was not its cost to Johnson but the current value placed on it at the time of and in the stock purchase.

At the conclusion of the evidence, the trial judge rejected the government's, and accepted plaintiff's, legal contention. He did this first by overruling the government's motion for a directed verdict and inquiring whether the plaintiff desired to move for a directed verdict.

---

other than Spruce was $80 per share. The price of $298.06 per share paid by plaintiff for the Spruce stock was calculated by valuing the Johnson stock owned by Spruce, virtually its only asset, at $80 per share. Plaintiff acquired that block indirectly by purchasing substantially all of the outstanding Spruce stock and by liquidating Spruce on Feb. 25, 1952, partly into plaintiff and partly into plaintiff's wholly owned subsidiary, Washington Veneer Corporation, herein usually called "Veneer".

Thereafter, by means of a statutory merger of Johnson and Veneer into plaintiff on June 29, 1953, plaintiff acquired direct ownership of all the Johnson assets, including the timber.

After the merger and during the latter part of 1953, plaintiff realized a gain from cutting part of the timber. In this tax refund suit, the sole issue in the court below was whether plaintiff, in determining its gain on the sale of timber, should treat as its cost an amount equal to the current value placed on the timber in fixing the price at which the stock was purchased in the fall of 1951 ($9 per thousand feet), or Johnson's original cost of the timber during the 1920's ($2.50 per thousand feet).

He did it, second, when, plaintiff, stating that it thought the matter would be best disposed of by a verdict, requested the submission of the case to the jury, he gave instructions to the jury, to which defendant objected as virtually directing a verdict for plaintiff, that in order to recover plaintiff must show only that in acquiring the Johnson stock it had an original abiding and continuing intention to take over the Johnson assets, and in effect that if the jury believed the testimony of plaintiff's witnesses, it must find for plaintiff.

When, contrary to the general expectation, the jury returned a verdict for the United States, the plaintiff moved for a new trial on the ground that the verdict was without evidence to support it and manifestly unjust, and, this motion denied, appealed from the judgment presenting here a single specification of error. This is: that there was a complete lack of evidence to support the verdict; that it was, therefore, manifestly unjust and in excess of the powers of the jury and may not stand; that it was undisputed that plaintiff's real purpose and primary objective was to acquire assets and not stock; and that it was a complete miscarriage of justice for the jury to render a verdict in complete contradiction of all the evidence, that its real purpose and primary object in purchasing the Johnson stock had been not to acquire the Johnson assets but simply to acquire the stock in, and, thereby, the Johnson corporation.

Citing many cases [4] from this court holding that where evidence is credible, reasonable, uncontradicted and unimpeached, a jury may not reject or disregard it, and cases [5] holding that where the verdict is clearly contrary to the justice and right of the case, the refusal of a trial judge to grant a new trial is an error of law subject to review and correction on appeal, appellant insists that the judgment must be reversed.

On its part, the defendant, considering itself snugly entrenched behind the verdict which below it had vigorously insisted, as matter of law, should not be taken but that instead a verdict should be instructed for it, sets up as an impassable road block in plaintiff's way the procedural point that, since taxpayer did not ask for a directed verdict but insisted on submitting the case to the jury, he may not, under the rules and practices, now urge in this court that a verdict should have been instructed for him that he should have a judgment. In addition, it urges that if appellant is not procedurally prevented from making its attack, it must be held, upon the record in this case, that whether plaintiff was entitled to the application of the Kimbell-Diamond doctrine was a question of fact which had to be, and has been, irrevocably determined by the jury against appellant.

We cannot agree with these contentions. Of the first, the procedural point, it is sufficient to say that the ready answer to the contention is that appellant does not ask for a reversal of the judgment for failure to direct a verdict and that the judgment be here rendered in its favor. In short, it neither assigns as error the submission of the cause to the jury nor contends that it was error to so submit it. On the contrary, recognizing the established distinction be-

4. Arnall Mills v. Smallwood, 5 Cir., 68 F. 2d 57; Alabama Title & Trust Co. v. Millsap, 5 Cir., 71 F.2d 518; Martin v. Burgess, 5 Cir., 82 F.2d 321; National Labor Relations Board v. Tax-O-Kan Flour Mills Co., 5 Cir., 122 F.2d 433; National Labor Relations Board v. Alco Feed Mills, 5 Cir., 133 F.2d 419; Howell Turpentine Co. v. Commissioner, 5 Cir., 162 F.2d 319; Foran v. Commissioner, 5 Cir., 165 F.2d 705; National Labor Relations Board v. Ray Smith Transport Co., 5 Cir., 193 F.2d 142; Kuykendall v. United Gas Pipe Line, 5 Cir., 208 F. 2d 921; United States v. Johnson, 5 Cir., 208 F.2d 729; Ross v. Commissioner, 5 Cir., 227 F.2d 265; Deitz v. Greyhound, 5 Cir., 234 F.2d 327.

5. Kirby Lumber Corp. v. Laird, 5 Cir., 231 F.2d 812; Indamer Corp. v. Crandon, 5 Cir., 217 F.2d 391; Commercial Credit Corp. v. Pepper, 5 Cir., 187 F.2d 71; Whiteman v. Pitrie, 5 Cir., 220 F.2d 914.

tween the trial judge's functions[6] of directing a verdict and granting a new trial, following common law procedures, preserved not exactly but basically in the Seventh Amendment, Galloway v. United States, 319 U.S. 372, at page 390, 63 S.Ct. 1077, at page 1087, 87 L.Ed. 1458, and exemplified in the cases cited in note 6 supra, appellant, as it had a right to do, requested the submission of the case to the jury. Thereafter the jury having, as plaintiff claims, returned an unwarranted and unjust verdict, it, as it also had the right to do, following the basic procedure in dealing with such a jury verdict, sought a new trial and, this denied, appealed here to correct the abuse of discretion in denying it.

On its second contention, that the verdict was not against the truth and right of the case and it was not an abuse of discretion to deny a new trial, appellee stands no better. We think it is to deny the truth and substance of the case to claim, under the undisputed facts, that any other purpose was or could have been in appellant's mind than to buy the stock to get the timber, and that, whether it took one, two, or three steps to do it, is wholly immaterial.

In the Kanawha case, supra, this court, with Judge Rives as its organ, thus well stated the law controlling here:

"In determining the incidence of taxation, we must look through form and search out the substance of a transaction. Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 333, 65 S.Ct. 707, 89 L.Ed. 981; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596. This basic concept of tax law is particularly pertinent to cases involving a series of transactions designed and executed as parts of a unitary plan to achieve an intended result. Such plans will be viewed as a whole regardless of whether the effect of so doing is imposition of or relief from taxation. The series of

6. Marsh v. Illinois Central, 5 Cir., 175 F.2d 498; Aetna Casualty Co. v. Yeatts, 4 Cir., 122 F.2d 350. Cf. the concurring

closely related steps in such a plan are merely the means by which to carry out the plan and will not be separated. * * *" [214 F.2d 691.]

■ Examined in the light of this pronouncement, the testimony of the officers of the company, some of whom at the time of the trial no longer had any connection with it, when taken in the light of the overwhelming significance, in the transaction, of the timber and its tax base, does not, we think, permit of any other conclusion than that the merger was not an independent transaction but a concluding step in a series of steps necessary to carry out and give effect to the original, continuing, and controlling purpose of the taxpayer in the purchase of the stock.

The refusal of the court to grant a new trial was a clear abuse of discretion. The judgment is, therefore, reversed and the cause is remanded with directions to grant a new trial.

Reversed and remanded.

opinion on rehearing in Sunray Oil Corp. v. Allbritton, 5 Cir., 188 F.2d 751.