Frances H. TURNER, as Guardian for Frank N. Turner, Appellant,

v.

**ATLANTIC COAST LINE RAILROAD COMPANY, Appellee.**

No. 18403.

United States Court of Appeals Fifth Circuit.

July 20, 1961.

James A. Bagwell, Atlanta, Ga., for appellant.

Wm. B. Spann, Jr., James E. Thomas, Atlanta, Ga., Alston, Sibley, Miller, Spann & Schackelford, Atlanta, Ga., of counsel, for appellee.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The plaintiff below, as guardian of her husband, Frank N. Turner, an incompetent, appeals from the district court's granting of the defendant's motion for judgment under Rule 50(b), F.R.Civ.P., 28 U.S.C.A.

Around six in the morning of November 8, 1955, Frank Turner was driving his 1955 Ford Victoria automobile on the Hoffmeyer Road, a black asphalt farm-to-market road located outside the city limits of Florence, South Carolina. He had left home, five and a half miles away, about thirty minutes earlier. It was a dark and foggy morning and visibility was poor. Turner had his windshield wipers oscillating, his headlights burning, his radio playing, and his windows raised. On the side of the road, about 323 feet from the Hoffmeyer Crossing, there was a South Carolina railroad crossing sign of the reflector type. Near the rail on the right shoulder of the highway, eighteen feet from the crossing there was a standard railroad wooden "cross-buck" sign, painted with "Prismo", a light-reflecting paint. At that point the railway tracks consist of one set of main line tracks. At the same time Turner approached the crossing, an Atlantic Coast Line freight train of seventy cars was traveling over the crossing at approximately fifteen to eighteen miles per hour. Turner's automobile struck the fifty-third car of the train, derailing the freight car. The automobile was demolished; it was dragged but a few feet. Turner was severely and permanently injured: he is now an incompetent. At the time of his trial, because of complete amnesia, he was unable to testify.

The case was tried before a jury. At the close of the plaintiff's evidence, the defendant moved for a directed verdict. The court reserved its decision on this motion. After all of the evidence was submitted, the defendant again made a motion for a directed verdict. This mo-tion was denied, too, and the case submitted to the jury. After a full day's deliberation the jury failed to agree on a verdict. The district court declared a mistrial. The defendant then filed a motion for judgment under Rule 50(b), F.R.Civ.P. The court granted this motion and entered judgment accordingly. The sole question on appeal is whether the district court erred in granting the defendant's motion for judgment.

■ The accident occurred in South Carolina where the common law doctrine of contributory negligence prevails. The parties concede that common law principles, as determined by Georgia courts, govern the merits of the case. Slaton v. Hall, 1929, 168 Ga. 710, 148 S.E. 741, 73 A.L.R. 891; Green v. Johnson, 1944, 71 Ga.App. 777, 32 S.E.2d 443; Craven v. Brighton Mills, 1952, 87 Ga.App. 126, 73 S.E.2d 248; Minter v. Kent, 1940, 62 Ga.App. 265, 8 S.E.2d 109.

■ The current principle controlling direction of a verdict is that a trial judge may grant a directed verdict only when there is no evidence which, if believed, would authorize a verdict against the movant; and, the trial judge must draw against the movant all reasonable inferences most favorable to the party opposing the motion. "[I]f the evidence is of such a character that reasonable men in an impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury." Swift & Co. v. Morgan & Sturdivant, 5 Cir., 1954, 214 F.2d 115, 116, 49 A.L.R.2d 924. See Galloway v. United States, 1943, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458; Wilkerson v. McCarthy, 1949, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Audirsch et al. v. Texas & Pacific Ry. Co., 5 Cir., 1952, 195 F.2d 629, 630. 2 Barron & Holtzoff, Federal Practice and Procedure, 760–6; 5 Moore, Federal Practice, §§ 50–50.02 (2d ed.); McBaine, Directed Verdicts, 31 Cal.L.Rev. 454 (1943); Blume, Origin and Development of the Directed Verdict, 48 Mich.L.Rev. 555 (1950).

■ There were no eye witnesses to the accident. The lower court, however, held that "the undisputed evidence in the record, though circumstantial as to the collision itself, will not sustain any inference except that Mr. Turner's negligence materially contributed to his injuries, even if negligence on the part of the Railroad was shown, which is doubtful." Turner was driving his automobile at a speed great enough to demolish his automobile and to derail a loaded freight car weighing 107,000 pounds.[1] Skid marks on the highway, measured immediately after the collision by the highway patrolman who investigated the accident, extended seventy-eight feet from the rails. There is uncontradicted testimony by expert witnesses for both the plaintiff and the defendant that an automobile driven at a speed of thirty miles an hour would brake to a complete stop on the Hoffmeyer Road, even if the pavement were damp, within a distance of fifty feet; and that a car traveling thirty-seven miles an hour would brake to a complete stop within seventy-eight feet. The only permissible inference is that Turner could have stopped within the seventy-eight feet *if* he had been driving at a safe speed.

The estimates calculated from the skid marks are not contested as such; the plaintiff contends that there is no evidence to show these skid marks were made by Turner's automobile.[2] The lower court held, and we agree, that reasonable minds could not differ on this question. The skid marks went right up to the tracks, and Turner's car was dragged along the tracks in the direction the train was moving. The marks were examined immediately after the collision. Other calculations as to the speed of Turner's automobile, made without regard to the skid marks, corroborate the estimates based on the skid marks. Dr. Stoneking, an experienced mechanical engineer, testified that the force required to derail the freight car and cause the damage that was done to the automobile indicates that the speed of Turner's car at the moment of impact was a minimum of 39.9 miles an hour and a maximum of 48 miles per hour; that the estimated speed of Turner's automobile at the time the skid marks began was between 57.4 miles an hour and 63.4 miles an hour. The plaintiff's expert did not dispute this estimate. The physical facts of the accident, the derailment of the train car, and the demolition of Turner's automobile, point inexorably to the inference that Turner was traveling far faster than a prudent man should have been traveling in approaching the railroad crossing. As stated in the memorandum opinion below, "the undisputed facts in the record * * * permit of no other inference than that Mr. Turner's speed was neg-

1. The plaintiff's explanation of the collision was that Turner's automobile "penetrated underneath" the boxcar in such a way that the interaction of the two at right angles caused the derailment. Thus, the plaintiff says, the angle of collision, not the speed of the automobile, caused the derailment, and in any case this is a question for the jury. This explanation is unpersuasive. Turner's automobile was dragged only a few feet by the train, making it next to impossible for the "angle" theory to be correct. The simple, likely explanation is that the impact of Turner's automobile smashing into the freight car caused the derailment.

2. The plaintiff asserts that the uncontradicted testimony of Jonathan Karas, an expert witness, is that Turner's automobile could not possibly have left the seventy-eight feet of skid marks. This statement leaves out a lot of ifs, ands, and buts. In Turner's 1955 Ford Victoria there is a difference of three inches between the spacing of the front wheels and the rear wheels. In answer to a hypothetical question by the plaintiff's attorney, Karas said that if the skid marks overlapped perfectly, they could not possibly have been made by a 1955 Ford Victoria. Such a statement is reasonable enough. But it rests on the assumption that the tracks overlapped perfectly. When asked on cross-examination if he could state as a fact whether the tracks did overlap perfectly, Karas admitted that he could not tell. There is nothing in the record to show that the tracks overlapped perfectly.

ligent and unsafe, and materially contributed to the injuries he received. Under common law, as Georgia courts find it, this completely bars his recovery. Evans v. Georgia Northern R. R. Co., 1949, 78 Ga.App. 709, 52 S.E.2d 28; Central of Georgia Rwy. Co. v. Adams, 1929, 39 Ga.App. 577, 147 S.E. 802.

Undisputed testimony shows that Turner had driven this road before. He had recently started using the road to drive to work because it provided a shorter route.[3]

Section 58–999 of the Code of Laws of South Carolina of 1952 specifies the kind of sign to be placed at railroad crossings. The railroad not only complied with this statute, but went further and painted the sign with "Prismo", a paint that catches and reflects light rays. But if other signs should have been constructed in the exercise of ordinary care, then the failure to construct them would be negligence on the part of the railroad that would not excuse Turner's contributory negligence. Georgia Northern Railway Co. v. Rollins, 1940, 62 Ga.App. 138, 8 S.E.2d 114. There is no evidence, however, that the Hoffmeyer Crossing was so dangerous or so unusual as to require the defendant in the exercise of ordinary care to provide other warning devices. The crossing is outside the city limits, on a farm-to-market road used by farmers to carry their produce to market. From 1936 to 1955 there were only two accidents at the crossing.

Summarizing, the record shows that Turner failed to see or else ignored a reflectorized highway sign 323 feet from the crossing, failed to see or else ignored the railroad cross-buck reflectorized sign eighteen feet from the crossing, and operated his automobile at a rate of speed that was excessive under any circumstances but was rash and imprudent in view of the lack of visibility at the time of the accident.

In reviewing an accident case when the plaintiff has been injured grievously, hard as our sympathies may pull us, our duty to maintain the integrity of substantive law pulls harder. Every case involving alleged negligence or contributory negligence or both is not a case for the jury to decide: not if the substantive law of negligence is to survive. Here, accepting the strict test for direction of a verdict that a trial judge must view the evidence in the light most favorable to the party against whom the motion is aimed, we still feel compelled to affirm the judgment of the district court; there are no facts or permissible inferences on which a jury could base a finding that Turner was not contributorily negligent.

Judgment is

Affirmed.

---

3. Mr. Turner, during the course of a medical examination (three and a half years after the accident, however) told the physician that he did not stop and look when he came to the crossing, because he knew the train schedule and it was not time for the train. Mrs. Turner testified that he was not familiar with the road, and that he used a different route. An old friend testified that Mr. Turner had told him that he was using the Hoffmeyer Road in driving to work because it was nearer. A neighbor testified that at Mr. Turner's house he and Mr. Turner checked the mileage by Hoffmeyer Road on a road map. Later, Mr. Turner told him that he liked it better than the old route because it was shorter and there was less traffic on it.