**ROBINSON RAT HOLE SERVICE, INC.,**
Appellant,

v.

**RICHARDSON OILS, INC., et al., Appellees.**

No. 5721.

Court of Civil Appeals of Texas.

El Paso.

June 21, 1965.

Rehearing Denied Sept. 15, 1965.

Strasburger, Price, Kelton, Miller & Martin and John H. Hall and Royal H. Brin, Jr., Dallas, for appellant.

Shafer, Gilliland, Davis, Bunton & McCollum, Odessa, Edward W. Sampson, Jr., Fort Worth, for appellees.

PRESLAR, Justice.

This is a common law negligence action for property damages in which a take-nothing judgment was entered based on jury findings that defendants were negligent and plaintiff was guilty of contributory negligence. Plaintiff, as appellant, assigns error as to the contributory negligence portion of the judgment only. We affirm the judgment of the trial court.

The appellant, Robinson Rat Hole Service, Inc., was engaged by defendants to drill a rat hole and mouse hole at the defendants' well site in preparation for the moving by defendant of a drilling rig to the well to clean it out and work it over. "Rat hole" and "mouse hole" are oilfield terms for shallow holes drilled adjacent to the well hole for the placement of certain tools or parts of the drilling rig equipment during its operation. To drill the rat hole and mouse hole the Robinson two-man crew was using a small mobile drilling unit which was destroyed by fire during the drilling of the second hole when the drill bit struck a gas pipeline some four to six feet under the surface. It is for the destruction of the mobile drilling unit that this suit is brought.

The area around the well, some 75 feet by 150 feet, which serves as a foundation for the drilling rig and is called a "pad", had been leveled and made ready for the drilling operations by the defendants prior to the entry thereon by the plaintiff. The locations of the rat hole and mouse hole were fixed at some point around the perimeter of the well hole, depending on which direction the drilling rig faced, and were fixed within a few inches' tolerance by the dimensions of the drilling rig which the defendants would be using. Plaintiff's employees inquired of defendants the direction which their rig would face, then measured it themselves to determine the exact location of the mouse and rat holes. Plaintiff's employees did not know of the existence of the pipeline under the pad, but an employee of the defendants did have such knowledge. That employee was to be present to point out the location of the gas pipeline to plaintiff's employees when they arrived to commence working at the arranged time of 8:00 A.M., but plaintiff's employees arranged with another of defendants' employees, who did not know of the pipeline, to dig the rat hole and mouse hole the night preceding the 8:00 A.M. date. That advance of time and the resulting mix-up brought about the accident, which occurred about midnight.

The jury found that the failure of defendants to warn plaintiff's crew was negligence proximately causing the accident. By their answer to Issue 17, the jury found that "The Robinson Rat Hole crew drilled on the location without first determining whether there was a buried pipeline under the pad." By Issues Nos. 18 and 19, it was found that such was negligence proximately causing the accident. This being a finding of contributory negligence, plaintiff cannot recover if the issues were proper and supported by the evidence.

Appellant does not question the form of the above issues, but says that they should never have been submitted, for the reason that its crew, as an invitee to the premises of the defendants, owed no legal duty to determine whether or not there was a buried pipeline under the pad where it was to drill the holes in question. We agree with appellant that it was an invitee (Snelling v. Harper, Tex.Civ.App., 137 S.W.2d 222, error dismissed, judgment correct), but we cannot agree that its crew owed no duty under the facts and circumstances of their

entry into the underground premises to which they were invited. The facts before the jury were that plaintiff's two employees were experienced oilfield workers. The one in charge of this operation, Eggleston, had been with plaintiff in this line of work for eight years, and testified to having drilled on other occasions where there were buried pipelines. On this occasion he recognized there was the potential danger of underground pipelines, said he knew he was supposed to look for pipelines and that he did look all over the pad, using the lights of his pickup truck. The site of their operations was in such proximity to a large gasoline plant that it was necessary for them to remove a portion of the fence surrounding the plant to position the mobile drilling unit. The exhibits and testimony show the gasoline plant was a well-lighted maze of pipes, roaring machinery and buildings one and one-half blocks in length. Plaintiff's employees said they knew men were working there at the time, and that it would have taken one of them about a minute to go from their place of operation to the office building at the plant. Both employees said they knew that the products flowing to and from the plant were carried by pipelines. The record shows that information as to the location of pipelines was available in the plant office, and it was, in fact, from that source that the defendants' employee found out about the pipeline under the pad. To men with the experience and knowledge of plaintiff's crew, all of these things they saw on the surface should have been to them signs of danger. They thus were charged with the duty to exercise such degree of care as would be exercised by a person of ordinary prudence, knowing what these men knew and seeing what they saw.

 In a common law action of this nature, the bare elements of recovery require that the plaintiff prove that the defendant owed a legal duty to plaintiff which he violated, and that plaintiff suffered injury which was proximately caused by such violation. Plaintiff must be free of fault proximately causing his injury, for one cannot recover where he brings about his own injury; nor can he recover where such injuries are caused by both himself and the defendant. In the case before us, the jury was given definitions of negligence and proximate cause. With these definitions as guides the jury convicted plaintiff and defendant of negligence proximately causing the accident. We see no error in determining this case within the usual framework or pattern of a negligence suit, though it be an "invitee-owner" situation as to which our courts have established a jungle of rules for determining the respective duties of the parties under innumerable circumstances. It is under those rules that the plaintiff-appellant in this case seeks to avoid the finding of contributory negligence against him and have this court determine as a matter of law that he owed no duty to determine if there were pipelines in the premises to which he was invited. We use the phrase *"in* the premises" because the premises here involved are subterranean. Plaintiff's work was to be performed underground. He was an invitee into the subsurface where neither he nor the owner could see. The liability of the owner to the invitee is predicated on the owner's superior knowledge of the conditions existing on the premises. His duty to warn the invitee of dangers is founded on his knowledge of them. No discussion is here necessary as to the situations where knowledge may be imputed to him for failure to inspect, lapse of time, etc., for we are not here concerned with the owner's duty except as reference to it is necessary for an understanding of the invitee's duty. Broadly speaking, if the owner has knowledge of dangers, he owes a duty to the invitee concerning them; if he has no knowledge, he owes no duty. If the invitee has knowledge of the danger, then the superior knowledge of the owner is erased and there is no duty. The situation where the invitee has knowledge of the danger has led to no little confusion in the discussion of the rule as to whether his knowledge places a duty on him or relieves the owner of his duty. In either event, the

end result is the same in that the invitee cannot recover from the owner if he, the invitee, had knowledge of the danger; so that is the significant inquiry. The holdings of our Supreme Court are that ordinarily a plaintiff-invitee cannot recover if he knows of the condition, realizes the danger, and appreciates the danger, or is charged in law with such knowledge, realization and appreciation. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368; McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391; Houston Nat. Bank v. Adair, 146 Tex. 387, 207 S.W. 2d 374; Wesson v. Gillespie, 382 S.W.2d 921. The duty imposed on the parties to the invitee-owner relationship can then be said to be based on their knowledge of the danger involved; knowledge from seeing the thing which is dangerous—open and obvious; knowledge by being told of the danger—warned; knowledge gained over a period of time—experience; knowledge from whatever source places a duty to act accordingly. Knowledge of a hidden danger imposes a duty as much as knowledge of any other type of danger. If the danger exists and there is knowledge of it, the duty is imposed. At the premises here involved there were things visible which, coupled with the knowledge of such things on the part of plaintiff's employees, became signs of danger. Their knowledge of petroleum products flowing to and from the plant by pipeline, and the proximity of this huge plant with its maze of pipes visible, were signs of danger. To the ordinary person these visible things might not mean much, but to these men of experience, they were signs of danger. At least, whether or not they were, poses a fact question which precludes us from finding, as a matter of law, that they owed no duty to determine whether danger existed. It is analogous to an "open and obvious" situation in which it is said that the invitee cannot close his eyes, but has a duty to look. There, looking is the standard of care required. Here, looking would do no good, but invitee must exercise a similar standard of care—inquire —before plunging into the sub-surface premises to which invited.

Appellant makes assignments of error that there is no evidence to support the jury's answers to the above-cited issues. The assignment being that there is no evidence, we look only to the evidence which supports the findings, and, as will be seen from the facts herein set out, there is some evidence to support each of the issues.

All points of error have been considered and all are overruled. The judgment of the trial court is affirmed.