Lucie GEDDES, Appellant,

v.

DAUGHTERS OF CHARITY OF ST. VINCENT DE PAUL, INC., and Michigan Mutual Liability Company, Appellees.

No. 21344.

United States Court of Appeals
Fifth Circuit.

July 14, 1965.

Donald V. Organ, New Orleans, La., for appellant.

Henry B. Alsobrook, Jr., Adams & Reese, Sam A. LeBlanc, III, New Orleans, La., for appellees.

Before JONES and BROWN, Circuit Judges, and SHEEHY, District Judge.

SHEEHY, District Judge:

The plaintiff below, Lucie Geddes, appeals from the action of the district court in granting the defendants' motion for a directed verdict under Rule 50 of the Federal Rules of Civil Procedure in her action for false imprisonment based upon the alleged unlawful detention of her in the De Paul Hospital in New Orleans, Louisiana, a private mental hospital owned and operated by the defendant-appellee, Daughters of Charity of St. Vincent De Paul, Inc. The appellee-defendant, Michigan Mutual Liability Company, was the liability insurance carrier for the hospital at all times pertinent.

The case was tried before a jury. At the close of the plaintiff's evidence the trial court, on motion of the defendants, directed a verdict in favor of the defendants and entered judgment accordingly. The sole question on appeal is whether the district court erred in granting the directed verdict.

It is well settled that a trial judge may grant a directed verdict only when there is no evidence which, if believed, would authorize a verdict against the movant; and the trial judge must draw against the movant all reasonable inferences most favorable to the party opposing the motion. If the evidence is

146

of such a character that reasonable men in an impartial exercise of their judgment may reach different conclusions, then the case must be submitted to the jury. Herron v. Maryland Casualty Company, 5 Cir., 1965, 347 F.2d 357 (June 8, 1965); Turner v. Atlantic Coast Line Railroad Company, 5 Cir., 1961, 292 F.2d 586; Swift & Co. v. Morgan & Sturdivant, 5 Cir., 1954, 214 F.2d 115, 49 A.L. R.2d 924.

Because of that rule and the nature of the question presented on this appeal, it is our duty to search the record, viewing the evidence in the light most favorable to the plaintiff, to see if it contains evidence from which the jury would have been warranted in finding for the plaintiff. Roosth v. Lincoln National Life Insurance Company, 5 Cir., 1959, 269 F.2d 171, Cert. Den., 361 U.S. 917, 80 S.Ct. 262, 4 L.Ed.2d 186. This we have done.

Miss Geddes was a life-long resident of Natchez, Mississippi, who was 59 years of age at the time of the trial of this case. Prior to the events which gave rise to the present litigation, Miss Geddes was retired and lived in her family home supported by the income from an inherited trust, which was administered by Francis Geddes, her brother and closest living relative. Miss Geddes had a long history of a number of ailments including alcoholism, drug addiction and a series of abdominal problems. The last mentioned problems resulted from a ruptured appendix which she suffered when she was a teenager. She had no history of previous treatment for a mental disorder.

In 1959, Miss Geddes was taken by her brother to the Natchez Sanitarium at Natchez, Mississippi, for treatment after he had been summoned to her home by her maid when the maid was unable to arouse Miss Geddes. At this institution she was under the care of a Dr. Stowers who had treated Miss Geddes before for other illnesses and who diagnosed her present condition as a probable addiction to a sedative. After several weeks of treatment at the Natchez Sanitarium, Dr. Stowers concluded that psychiatric care

would be required and recommended that Miss Geddes be transferred to the De Paul Hospital in New Orleans. After consultation with Dr. Stowers and with her brother, Miss Geddes agreed to be taken to the De Paul Hospital for treatment.

Miss Geddes was driven to the De Paul Hospital by her brother, accompanied by two nurses. Upon their arrival she was taken directly to the room assigned her while her brother took care of the details of the admission procedure. A psychiatrist, Dr. William Sorum, was given charge of Miss Geddes' case and saw her at regular intervals during her hospitalization at De Paul Hospital which lasted for one year and 22 days.

Miss Geddes testified, in effect, that when she was discussing with her brother and Dr. Sorum the matter of her going to the De Paul Hospital, she was not told that said hospital was a mental institution nor was she told that she had a mental condition and was going to receive psychiatric treatment at De Paul's; that at the time she entered De Paul's she did not know it was a mental institution and thought it to be a general medical hospital at which she was to receive medical treatments for the abdominal adhesions which had troubled her for a number of years; that she never requested nor authorized anyone to administer treatment to her for a mental condition; and that she did not realize that the hospital was a mental institution until some two days after her admission when she heard some of the other patients discussing their various ailments and was asked by them the nature of her own mental problems. This testimony was substantiated, at least to some degree, by the hospital record wherein an entry note made by a nurse on the date of Miss Geddes' admission to the hospital shows that Miss Geddes at that time stated to the nurse: "I had adhesions. That's what I'm in here for now."

Following Miss Geddes learning that the De Paul Hospital was a mental institution she requested of Dr. Sorum and the various nurses and nuns on the

staff that she be released and allowed to leave the hospital. These requests were viewed by the hospital as the customary and usual complaints almost universal among psychiatric patients and were ignored. On a few occasions Miss Geddes was permitted to leave the hospital to go shopping and/or attend various entertainment attractions in New Orleans. However, on each of said occasions she was accompanied by an employee of the hospital as an attendant and was given by the hospital staff a small amount of money which was sufficient only to cover her expenses for the day.

In August 1960 Miss Geddes sent a letter to an attorney in Natchez, Mississippi, asking that he assist her in getting out of the hospital. Shortly thereafter there was instituted on behalf of Miss Geddes in a civil district court of the Parish of Orleans a habeas corpus proceeding naming the Daughters of Charity of St. Vincent De Paul, Inc., as the respondent. A hearing in that proceeding resulted in the court ordering and directing the hospital to release Miss Geddes. Subsequent to the conclusion of that proceeding Miss Geddes instituted this action seeking to recover the damages she suffered and expenses incurred as a result of her alleged false imprisonment at De Paul Hospital.

■ Under Louisiana law there are two essential elements to the tort of false imprisonment, namely, (1) there must be a detention or restraint of the person, and (2) such detention or restraint must be unlawful. Crossett v. Campbell, 122 La. 659, 48 So. 141 (1909); and Sweeten v. Friedman, 9 La.App. 44, 118 So. 787 (1928).

■ As to the first element the defendants contend that the restraint of Miss Geddes was not sufficient to meet the requirements of a false imprisonment in that there were reasonable means of escape available to Miss Geddes which she failed to exercise. While there is evidence that would support a finding that there were reasonable means of escape available to Miss Geddes which she failed to exercise, there is evidence that would support a finding that no such means of escape were available. The evidence reflects that while Miss Geddes was in the hospital there were at least two locked doors barring her from leaving the institution, and there is ample evidence from which the jury could reasonably infer that the hospital personnel would have prevented Miss Geddes from leaving the hospital had she attempted to do so. As to the trips Miss Geddes occasionally was permitted to take to downtown New Orleans, the evidence shows she was always escorted on said trips by a nurse or other attendant and was given only five to ten dollars in money to cover her expenses of the trip which was not sufficient money to get her back to Natchez, her hometown, and she knew no one in New Orleans to whom she could turn for help had she been able to elude her companion. Such facts as those coupled with her ill health, age and weakened condition are such that we must conclude that reasonable men in an impartial exercise of their judgment could reach different conclusions as to whether there were reasonable means of escape available to Miss Geddes during all or any part of the time she was confined in the De Paul Hospital.

■ It is without dispute that Miss Geddes was not confined in the De Paul Hospital as a result of formal commitment proceedings.[1] As to the lawfulness of the detention of Miss Geddes, the defendants maintain that the restraint which was imposed, if sufficient to constitute an imprisonment, was lawful because Miss Geddes voluntarily presented herself for treatment at the hospital and, therefore, consented to such restraint as may have been imposed. Thus, the lawfulness of the detention or restraint of Miss Geddes by the defendant hospital rests upon whether such detention or

---

1. The procedures for the commitment of mental patients specified by the Louisiana Mental Health Act are not applicable to private institutions such as DePaul Hospital. (See La.Rev. Statutes, 28, Sec. 51, Parts II and III.)

restraint was consented to by Miss Geddes. Hunter v. Laurent, 158 La. 874, 104 So. 747, 750 (1925); Banks v. Food Town, Inc., La.App., 98 So.2d 719, 722 (1957); Coates v. Schwegmann Bros. Giant Super Markets, Inc., La.App., 152 So.2d 865 (1963).

While it is true that Miss Geddes agreed to be taken to the De Paul Hospital and entered said hospital without any objection on her part, she contends that she did not *voluntarily* enter the hospital or consent to be treated there because she was not aware of the fact that the hospital was a mental institution at the time she entered and did not learn such fact until about two days after she was admitted. If Miss Geddes, at the time she entered the hospital, did not know it was a mental institution and that she was to receive psychiatric treatments there, it cannot be said that she voluntarily entered the hospital and consented to receive psychiatric treatment. As above demonstrated, there was sufficient evidence to warrant a jury finding that Miss Geddes at the time she entered the De Paul Hospital did not know that it was a mental institution and did not consent to receive psychiatric treatment there.

Furthermore, as above indicated, there is evidence to the effect that commencing approximately two days after her admission to De Paul's, Miss Geddes, on four or five occasions, "begged" Dr. Sorum to release her from the hospital and in addition thereto on several occasions requested both the head nurse and the nun in charge of her ward in the hospital to release her and let her go home. This evidence is of itself sufficient to authorize a jury finding that, at some point subsequent to her entry in the hospital and during her stay therein, Miss Geddes withdrew her consent to detention in the hospital given on her original entry and that further detention at the hospital subsequent to such withdrawal of the consent constituted a false imprisonment, even though the jury might have believed and found that Miss Geddes, upon her original entry in the hospital, consented to be detained therein and to be given psychiatric treatments.

For the reasons above stated, we are convinced that the evidence required that the issues as to the false imprisonment of Miss Geddes and her damages, if any, resulting therefrom be decided by the jury and that it was error for the court to decide them as a matter of law and direct a verdict in favor of the defendants.

The judgment of the trial court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.