**MONSANTO CHEMICAL COMPANY,**
Appellant,

v.

**Edwin R. PAYNE, Appellee.**

No. 21900.

United States Court of Appeals
Fifth Circuit.

Jan. 11, 1966.

Rehearing Denied Feb. 23, 1966.

Hunter, District Judge, dissented.

John N. Touchstone, Houston, Tex., for appellant.

George E. Pletcher, Houston, Tex., for appellee.

Before TUTTLE, Chief Judge, COLEMAN, Circuit Judge, and HUNTER, District Judge.

COLEMAN, Circuit Judge:

This is a diversity action for the recovery of damages alleged to have been sustained as a proximate result of negligence of the defendant. At the close of plaintiff's proof, the trial court denied defendant's motion for a directed verdict. The defendant thereafter offered no proof, but renewed the prior motion, which was again over-ruled. There was a jury verdict for the plaintiff and judgment accordingly. The trial court then denied motions for judgment notwithstanding the verdict and a new trial. For the reasons hereinafter set out, we reverse.

Plaintiff was employed by an independent contractor who was doing certain work at defendant's plant in Texas City, Texas. While engaged in cleaning porcelain insulators, he was burned by a flash fire allegedly caused by an electrical arc. Plaintiff asserts, by his own opinion evidence only, that the arc was caused by a crack in the insulator, which, in turn, had

been caused by vibrations from company machinery.

The record is scanty, but so far as can be told from it plaintiff was the only witness who testified in the case. At the time of the accident, he was fifty-eight years of age and had over forty years of experience as an electrician and lineman. He had cleaned many insulators on other jobs. He knew it was hazardous work. During the first two days at work for his subcontractor employer at defendant's plant, he performed various odd jobs. On the third day, he was assigned to clean insulators on a rack of transformers serving defendant's plant. He began at about 8 o'clock in the morning and had completed the cleaning of nineteen insulators before he was burned at about the two o'clock hour. While cleaning the twentieth insulator, on which he had been at work for thirty minutes or more, the electrical "explosion", or arc, occurred, followed by the fire and the subsequent burns suffered by the plaintiff. During the insulator cleaning process, the electric current had not been turned off and the wires were hot. The plaintiff was aware of this and testified that he took every precaution known to him to avoid injury. He placed rubber blankets on the ground below him, put blind house on the space nearest the insulator he was working on, was wearing rubber gloves, and was standing on a scaffold made entirely of wood. He had an assistant observing him at all times for the purpose of giving warning if he came near a "hot phase". He had no metal on his body other than a belt buckle. Apparently these precautions were effective, as the plaintiff did not suffer electrical shock, but was, as stated, burned by the flames which erupted near him.

The insulators were being cleaned because they had become covered with some kind of hard, chemical-like crust to a thickness of approximately ⅟₁₆th of an inch. Plaintiff had been directed by his sub-contractor employer to remove this substance. The method pursued was that of wrapping a clean white cloth around a pine stick, so as to make a mop, dipping the mop in a nonconducting cleaning fluid known as "Varsol", and applying the chemical with a rubbing motion to the crust which had formed on the insulator. The Varsol would dissolve the crust, and sufficient application would ultimately result in the entire insulator being made clean.

The plaintiff, in his testimony, described the work as "dangerous" and "hazardous", but could not remember requesting that the current be turned off while he worked on the insulators. When plaintiff began work on the twentieth insulator he looked at it pretty carefully but observed no defect nor any indication of "electrical leakage". He had been rubbing the Varsol on the insulator for about thirty minutes when he heard a "buzz", indicating an electrical arc. The flash fire occurred instantaneously.

Neither before nor after the fire did the plaintiff actually see any crack or other defect in the insulator. He did not know, and offered no opinion, as to when the insulator had been last inspected or cleaned, if ever. From direct observation, that is, from seeing it, plaintiff could not state that a crack in the insulator actually existed, if one did exist, nor how long it may have been there. Qualifying as an expert in electricity, it was his opinion that the arc did, in fact, result from a crack in the insulator, and that the crack was caused by prolonged vibration from a nearby compressor station. He thought that this defect in the insulator, which he could establish only as a matter of expert opinion, was opened by the pressure of the cleaning action, causing the fiery results.

The defendant contended on its motion for a directed verdict that there was no evidence, or wholly insufficient evidence, of negligence on its part proximately causing the accident; that there was no evidence it had breached any duty owed the plaintiff as an invitee on its premises, engaged at the time as an employee of an independent contractor.

After the motions had been denied, and on the testimony above narrated, six sep-

arate issues were submitted to the jury, pursuant to which the jury found:

(1). Defendant had not been negligent in failing to clean and maintain the insulators in question;

(2). Defendant had not been negligent in failing to de-energize the electric line under the existing circumstances;

(3). Defendant was negligent in failing properly to inspect the insulators;

(4). Defendant was negligent in failing properly to warn plaintiff, that he had no actual knowledge of the hazards involved in cleaning insulator number twenty, and had no appreciation of the extent of the danger involved in cleaning insulator number twenty.

(5). The accident was not unavoidable; and

(6). Damages amounted to $15,000.

On the grounds previously raised defendant then moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. These motions were denied, hence this appeal.

■■ A directed verdict for the defendant would have been permissible only if there was no evidence which, if believed by the jury, or any reasonable inferences to be drawn therefrom, which would authorize a verdict against it. In other words, for the purposes of the motion, the plaintiff's testimony as to any material fact had to be accepted as true and all reasonable inferences to be drawn therefrom had to be settled in favor of the plaintiff. Geddes v. Daughters of Charity of St. Vincent DePaul, Inc. (5 Cir., 1965), 348 F.2d 144; Herron v. Maryland Casualty Company (5 Cir., 1965), 347 F.2d 357; Turner v. Atlantic Coast Line Railroad Company (5 Cir., 1961), 292 F.2d 586; Swift & Company v. Morgan & Sturdivant (5 Cir., 1954), 214 F.2d 115, 49 A.L.R.2d 924.

■ This being the rule, we must view the evidence in that light most favorable to the plaintiff and then determine if it contained any evidence which would have supported a verdict in his favor. Geddes v. Daughters of Charity of St. Vincent

DePaul, Inc., supra; Roosth v. Lincoln National Life Insurance Company (5 Cir., 1959), 269 F.2d 171, cert. denied, 361 U.S. 917, 80 S.Ct. 262, 4 L.Ed.2d 186.

Did plaintiff's evidence, accepting it as true, raise any question of actionable negligence which should have been submitted to the jury? American Hardware Mutual Insurance Company v. Vick (5 Cir., 1959), 268 F.2d 183; Georgia-Pacific Corp. v. United States (5 Cir., 1959), 264 F.2d 161.

We think not.

The litigants agree that the plaintiff was an invitee on defendant's premises.

In the recent case of Robinson Rat Hole Service, Inc. v. Richardson Oils, Inc., 393 S.W.2d 629 (June 1965, rehearing denied September, 1965), the Court of Civil Appeals, El Paso Division, summarized the Texas law as to the owner-invitee situation as follows:

" * * * The liability of the owner to the invitee is predicated on the owner's superior knowledge of the conditions existing on the premises. His duty to warn the invitee of dangers is founded on his knowledge of them. * * * Broadly speaking, if the owner has knowledge of dangers, he owes a duty to the invitee concerning them; if he has no knowledge, he owes no duty. If the invitee has knowledge of the danger, then the superior knowledge of the owner is erased and there is no duty. * * * The holdings of our Supreme Court are that ordinarily a plaintiff-invitee cannot recover if he knows of the condition, realizes the danger, and appreciates the danger, or is charged in law with such knowledge, realization and appreciation. Halepeska v. Callihan Interests, Inc. [Tex.], 371 S.W.2d 368; McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391; Houston Nat. Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374; Wesson v. Gillespie [Tex.], 382 S.W.2d 921. The duty imposed on the parties to the invitee-owner relationship can then be said to be based on their knowledge of the danger involved;

knowledge from seeing the thing which is dangerous—open and obvious; knowledge of being told of the danger—warned; knowledge gained over a period of time—experience; knowledge from whatever source places a duty to act accordingly. Knowledge of a hidden danger imposes a duty as much as knowledge of any other type of danger. If the danger exists and there is knowledge of it, the duty is imposed."

In Wesson v. Gillespie, 382 S.W.2d 921 (1964), the Texas Supreme Court speaking on the same subject stated:

"The holdings of this Court are that ordinarily a plaintiff-invitee cannot recover if he knows of the condition, realizes the danger, and appreciates the danger, or is charged in law with such knowledge, realization, and appreciation. Halepeska v. Callihan Interests, Inc., supra; McKee v. Patterson, supra; Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374 (1948)."

 The testimony of the plaintiff, solely from his own lips, positively delivered by him and thus beyond dispute, established that (1) he was a thoroughly experienced electrician, qualified before the court as an expert; (2) had cleaned insulators many times on other jobs; (3) knew the operation was hazardous and dangerous; (4) voluntarily went ahead although aware of the danger; (5) his own inspection of approximately thirty minutes duration revealed no defect in the insulator; (6) was well aware of the existing compressor vibration; (7) knew that even wind vibration could cause cracks in insulators; (8) had seen cracked insulators before; (9) was charged with the knowledge of what the vibration might cause here; and (10) under the facts of this case was in possession, rather than the owner, of superior knowledge of the hazards exactly involved.

This being true, we are compelled to hold that the directed verdict for the defendant should have been granted, necessitating reversal here with directions to dismiss the action.

█ Strictly speaking, this obviates discussion of the failure to grant judgment notwithstanding the verdict. It may be well, however, to point out that the jury specifically found the defendant *not negligent* and not liable for failing to *clean* and *maintain* the insulator. The jury did find the defendant liable in "failing to properly inspect the insulator" and give warning pursuant to such inspection. As to that finding, however, there was no supporting evidence from any source as to when or how often the insulator had been inspected. The proof was equally silent as to the kind or frequency of inspection which should have been exercised as a matter of due care. There was no proof of failure to follow such standards. Any inference to be drawn from the insulator being dirty or weather-beaten would have to yield, it seems to us, to the undisputed evidence to the effect that plaintiff, an expert experienced in insulator cleaning, had the insulator under intense inspection, aided by cleaning, for thirty minutes. During that time he saw nothing wrong. He could not tell anything afterwards except as a matter of opinion. An inspection by defendant could not have revealed any more than the plaintiff himself observed before the accident, which was nothing.

Of course, the case would have been different if there had been proof of some standard of due care as to cleaning this insulator, violated by the defendant and proximately causing the accident.

So, a judgment notwithstanding the verdict would have been in order, and the result remains the same.

Reversed, with directions to dismiss the action.

HUNTER, District Judge (dissenting):

The majority here concludes that under the facts Payne, rather than Monsanto Chemical (which owned and maintained the electrical apparatus), had su-

perior knowledge of the hazards involved, and therefore there was no duty on the part of Monsanto to warn Payne. If this were a case where plaintiff had been shocked by a current of electricity flowing through lines, I would be inclined to concur; but there Payne certainly had no knowledge, nor did he appreciate, the existence of a cracked insulator, the defect in which was hidden from his view by a crust that Monsanto had permitted to form around the insulator. The jury who saw and heard Payne found that he did not appreciate the hazard and that he did not voluntarily expose himself to a known and appreciated danger. The evidence and reasonable inferences to be drawn therefrom, in my judgment, support the jury's finding.

Defendant owned and maintained the electrical machinery and premises, but it permitted a ¹⁄₁₆th inch crust to form on the insulator. The defect would have been visible to plaintiff, had the crust not been permitted to cover the insulator. The evidence supports at least a reasonable inference that the insulator had been subjected to vibration for a considerable length of time, since the insulator was dirty and weather beaten, and the conductors leading to the insulators were deteriorated and rotten. The defendant knew how long the insulators had been used, and how long these insulators had been subjected to the vibration of the transformer substations. Yet, the defendant did not impart any of this knowledge to the plaintiff. The jury could have well concluded that if the defendant had informed plaintiff of this, he might have protected himself against the specific danger to which he was subjected. He might well have insisted that Monsanto de-energize its lines.

My examination of the record and the law leaves me with a definite conclusion that the court below did not err in sending this case to the jury. I cannot agree with the majority that there was no genuine issue as to whether defendant breached its duty. A jury could reasonably find, and did find, otherwise.

I respectfully dissent.