Elmer H. ISAACS, Appellant,

v.

AMERICAN PETROFINA and Glen
Mitchell, Appellees.

No. 23177.

United States Court of Appeals
Fifth Circuit.

Nov. 7, 1966.

---

Warren Burnett, Robert D. Pue, Odessa, Tex., for appellant.

Marvin S. Sprain, Hugh F. Rives, Jr., J. M. Lee, McMahon, Smart, Sprain, Wilson & Camp, Abilene, Tex., for appellees.

Before JONES and COLEMAN, Circuit Judges, and JOHNSON, District Judge.

COLEMAN, Circuit Judge:

This is another diversity case, whose number is legion, in which a federal

court, with an eye on *Erie* [Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188], must attempt to fathom, until the State Court says otherwise, a question of state law. The suit was for personal injuries suffered by a business invitee in a fall in a gasoline service station. Trial began to a jury. Defendant was granted a directed verdict at the close of plaintiff's proof. We reverse and remand for a new trial.

The Plaintiff, Isaacs, was driving through Texas with Mr. Carrell Cone on a business trip. Cone owned the car and was doing the driving. At about 7:00 P.M., while it was still daylight, they stopped at a gasoline station in Cisco, Texas, to buy gas and use the rest room. The station was on the left side of the highway, and Cone pulled in on the highway side of the gas pumps so that the door on the driver's side of the car was next to the pumps. Isaacs got out on the passenger side of the car, walked around the front of the car, and went into the station. He went to the rest room, paid for the gas, and returned to the passenger side of the car, approaching from the rear. As he reached for the handle of the car door, Isaacs stepped in a strip of light colored oil, three inches wide and three feet long. He slipped and fell. He was stunned by the fall and could not remember how he fell, but there was evidence that he fell on his back. Injuries occurred to wrist and neck.

Cone and Isaacs testified that the oil was located near the rear wheel of the car, the streak extending toward the highway. Cone stated that he checked his car, and the oil had not come from it. Cone and Isaacs had purchased no oil.

At the time of the accident the attendant was fooling with the coke machine, Cone and Isaacs drove on without actually reporting the incident to him, but both men testified that he cleaned up the oil streak before they left the station. Cone's car had remained at the gas pumps for about twenty minutes before the fall occurred, and no other cars had come into the station during that time.

It was developed at trial that it was the duty of the station attendant to check after servicing each car to see if any oil had dripped on the pavement while oil was being put into the car or from a leak. A cleaning compound especially made for removing oil from pavement was kept at the station.

Isaacs testified that he did not see the oil before he stepped in it because he was looking at the car door rather than at the ground. There was evidence that the oil was difficult to see because it was unused, new oil, light in color, lying on a light colored pavement.

Isaacs, a used car salesman, introduced into evidence his record of earnings since the accident, but he presented nothing concerning his prior employment except that he had held a steady job selling cars for about a year. He filed no income tax returns in 1961, 1962, or 1963. He testified that he had had to visit several doctors over a period of about one year for treatment of his wrist and neck injuries. His wrist was in a cast for about one month and in a splint for about one and one-half months. No doctor testified concerning Isaacs' injuries, but Isaacs stated and demonstrated that he did not yet have full use of his injured arm. He also indicated that he still was taking medication for pain connected with his neck injury. There was no evidence as to the cost of Isaacs' medical care.

The grounds asserted by defendant in support of the directed verdict, in summary, were:

(1) No liability for the kind of substance on the driveway;

(2) Evidence establishes that the substance was on the driveway but not that it had been there for a sufficient time to have been discovered by the exercise of due care and removed by the defendant;

(3) The substance was so open and obvious that the defendant had no duty to warn the plaintiff;

(4) No competent evidence of damages.

In response to inquiry from plaintiff's counsel, the Court declined to state the particular ground on which the motion was granted. The record reveals, however, that when he later explained to the jury why they were being relieved of further consideration of the case he dwelt exclusively and with some elaboration on the third point, that the danger was so open and obvious there was no duty to warn appellant.

We accept as correct the following statements of appellee as to the Texas law:

"* * * in a slip and fall case the plaintiff must prove one of the following: (1) that the defendant placed the foreign substance on the floor; (2) that it knew that the foreign substance was on the floor and negligently failed to remove it; or (3) that it had been on the floor for such a period of time that it would have been discovered and removed by the defendant in the exercise of ordinary care, citing H. E. Butt Grocery Co. v. Russell, Tex.Civ.App., 391 S.W. 2d 571, n.r.e. (1965); Great Atlantic & Pacific Tea Co. v. Giles, Tex.Civ. App., 354 S.W.2d 410, writ refused, n.r.e. (1962); Sherwood v. Medical & Surgical Group, Tex.Civ.App., 334 S.W.2d 520, writ refused (1960); H. E. Butt Grocery Co. v. Johnson, Tex. Civ.App., 226 S.W.2d 501, writ refused, n.r.e. (1949)."

We likewise note the holding of the Supreme Court of Texas in Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (1963):

"If there are dangers which are not open and obvious, he is under a duty to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof. But if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them 'no duty' to warn or to protect the invitees. This is so, the cases say, because there is 'no duty' to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof."

We accept as correct the following contentions of plaintiff:

"The quantity and quality of proof necessary to make out a case for submission to a jury in a federal court are determined by the Seventh Amendment to the Constitution of the United States, the Federal Rules of Civil Procedure, and the decisions of the courts of the United States. White v. New York Life Ins. Co., 5 Cir., 1944, 145 F.2d 504; Wright v. Paramount-Richards Theatres, 5 Cir., 1952, 198 F.2d 303; Reuter v. Eastern Air Lines, 5 Cir., 1955, 226 F.2d 443; and Continental Casualty Co. v. Holmes, 5 Cir., 1959, 266 F.2d 269; and cf. Dick v. New York Life Ins. Co., 1959, 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935." Revlon, Inc. v. Buchanan, 271 F.2d 795, 800 (5th Cir., 1959).

"It is the function of the jury, not the court, to weigh and evaluate the evidence on both sides of a contested question. If there is a conflict in the evidence, the jury must resolve such conflict. * * * If the state of the evidence is such that it presents no conflict, nevertheless, if reasonable minds may draw conflicting or contrary inferences from the same evidence requiring different verdicts, it is for the jury to determine which is the correct inference. For the purpose of this opinion, we must accept as true the credible evidence adduced by the Plaintiff Wells [citing many cases]." Wells v. Warren Company, 328 F.2d 666, 668, 669 (5th Cir. 1964).

"[T]he evidence must be viewed in the light most favorable to the plaintiff, giving the plaintiff the benefit of every inference favorable to him

which may be fairly drawn. It is not for the court to weigh the conflicting evidence or to judge the credibility of witnesses. Whenever the evidence is such that fair-minded men may draw different inferences therefrom, and reasonably disagree as to what the verdict should be, the matter is one for the jury." American Fidelity & Casualty Co. v. Drexler, 5 Cir., 1955, 220 F.2d 930, 932–933.

Under the Texas law controlling liability and the federal rules governing the granting of directed verdicts, did the plaintiff make a case which should have gone to the jury? We think he did.

Isaacs contends that whether or not the oil had been on the driveway long enough that by exercising ordinary care defendant should have discovered it was an issue of fact for the jury because: (1) Cone's car was parked next to the gas pumps for twenty minutes; (2) there were no vehicles at the pumps when Cone pulled into the station; (3) no oil was purchased by Cone or Isaacs; (4) Cone's car had not leaked any oil; (5) the attendant was fiddling with the coke machine when the accident occurred; and (6) it was the duty of the attendant to inspect the driveway after servicing each car to look for oil spots.

■ We agree. In a public filling station where the attendant was required to check the pavement after servicing each car to determine if there had been any oil spilled, a jury could well find that two or three minutes should have been sufficient time in which to have seen the oil. It most certainly could have found that twenty minutes were adequate. If twenty minutes are not enough *as a matter of law*, then would twenty-five have been sufficient? Would thirty? The answer is that this is a question of fact, to be decided by the jury from all the evidence and the inferences reasonably to have been drawn therefrom.

The facts in Service Refining Co. v. Hutcherson, 179 S.W.2d 772 (Tex.Civ. App. 1944) were analogous to those in the instant case. The judgment in favor of the injured party was affirmed. The spot of oil in the *Hutcherson* case was anywhere from 3½ to 10 feet in diameter. At the time of the fall, which resulted in death, the employees of the filling station were engaged in the performance of their duties. They had been instructed to look out for spots of oil on the sidewalk and a compound was kept to put on these spots. There was nothing to keep the employees or the injured party from seeing the oil. The deceased wore glasses but there was nothing the matter with his eyes. The Texas Court of Civil Appeals was of the opinion that the jury could have inferred from the facts and evidence that deceased was keeping a lookout for cars rather than for a more unusual danger caused by the negligence of the appellant and which he might not have anticipated would probably exist. Diligent search fails to reveal any subsequent Texas cases which have mentioned this case for the purpose of overruling it or distinguishing it. We prefer to accept it as the last word of the Texas Courts on facts such as we have here.

■ We are particularly constrained to this view when we recall that this was the first visit of this appellant to this filling station and that he had a right to rely on the Texas law which requires those who are in control of premises for the use of public invitees to use reasonable care to keep those premises in a reasonably safe condition, McElhenny v. Thielepape, 1956, 155 Tex. 319, 285 S.W.2d 940, at 941.

Moreover, if the presence of oil at a filling station, left there by the negligence of the operator, is such an obvious danger that the owner must be exonerated as a matter of law, then the requirement that he keep his premises in a reasonably safe condition is a nullity—he may spill as much oil as he desires, he is immune. We do not think this is the law of Texas. If it is, the Texas Courts will no doubt correct our views when they have an opportunity to do so.

We find no merit in appellee's contention that the plaintiff proved no damages.

The judgment on the directed verdict will be reversed and remanded for a new trial.

Reversed and remanded.