**HANOVER INSURANCE COMPANY,**
**Appellant,**

**v.**

**William Fred BERRY, Jr., Appellee.**

**No. 26052.**

United States Court of Appeals
Fifth Circuit.

Sept. 12, 1969.

Sam A. LeBlanc, III, Timothy G. Schafer, Adams & Reese, New Orleans, La., for appellant.

Herman M. Schroeder, Richard A. Kuntz, Schroeder, Kuntz & Miranne, Gordon F. Wilson, Jr., Hammett, Leake & Hammett, New Orleans, La., for appellee.

Before THORNBERRY and DYER, Circuit Judges, and FISHER, District Judge.

FISHER, District Judge:

Appellant, Hanover Insurance Company, appeals from a judgment entered on a jury verdict in favor of Appellee, William Fred Berry, Jr., a plumber in the employ of B & B Plumbing & Heating Company, Inc., a subcontractor of Quality Construction Company employed to install the plumbing on a building being constructed for T.G.&Y. store in the city of New Orleans, Louisiana. Also employed as a subcontractor was the Chassaniol Roofing & Siding Company, hired to do the "finish" roofing.

Early in August 1963 Appellee Berry and Mr. Frank Bell, the President of B & B Plumbing, installed the ground level plumbing and then left the construction site to return later. During the interim other subcontractors did various work and Chassaniol Roofing began laying the "finish" roofing. This roofing was specified to be a composition roof made up of three or four layers of roofing felt covered by tar and gravel. B & B Plumbing returned to plumb in ventilation stacks of the roof on August 22nd. These vents are made of a soft lead metal and are put in place after the felt is laid but before the roof is finished with gravel and tar.

At around 9:00 a. m. on this date Berry and Bell began plumbing the vents in the usual manner. This consisted of Berry climbing a ladder to the inside ceiling and dropping a plumb bob to Bell in order to line up the pipes which were to be installed for the vent stacks. When satisfied with the plumb, Berry would make an "X" on the ceiling and punch a hole through the roof with an ice pick. This procedure was repeated for about an hour and when completed Berry went onto the roof to cut out the holes he had punched so that he could place the vents in the larger holes.

Also located in the roof area where Appellee worked was a scuttle hole. This

scuttle hole was designed for access to the roof after completion of the building. The scuttle hole was outlined by a frame of angle iron placed in the galvanized corrugated roofing. On Berry's third trip to the roof he fell to the floor of the building through the scuttle hole which was covered with tar paper, landing near Frank Bell and Frank Roth, a carpenter.

After Berry fell, Bell looked up and saw a hole in the roof and saw torn tar paper hanging down through the scuttle hole. As a result of his fall, Berry received severe injuries. The circumstances and manner in which he fell must be deduced from the evidence as Berry himself testified he remembered nothing about the day or how the accident happened.

At approximately 3:00 p. m. on the afternoon prior to the accident, Frank Roth was on the roof and saw the roofers rolling tar paper over the scuttle hole. Roth advised the roofers that to insure safety they should cut out the paper over the hole. A man holding himself out as foreman for Chassaniol stated he would cut the hole out. Roth testified that one could not tell there was a hole in the roof after the roofers rolled the tar paper over it, and that the roofers did not cut the hole out before he left work the afternoon before the accident.

The testimony of the roofers, Earl Williams and Milton Groins, is somewhat inconsistent as to whether the paper over the scuttle hole was ever cut out. Each roofer testified that he personally cut the hole out and that one of the general contractor's laborers came up and advised them to cover the hole up to protect the concrete below from rain. Apparently a role of felt or tar paper was tacked over the hole, if indeed it was ever cut out. The laborer laid some two-by-fours over the tacked paper. Groins testified that later they removed the tacked paper and two-by-fours from across the hole, finished laying their tar and felt rolls on the roof, retacked the felt or tar paper across the hole and then placed about four heavy rolls of felt paper across the hole. One of the rolls was a partially used butt piece which did not extend entirely across the hole. As best as can be determined from the record this was the posture of the hole when William Fred Berry, Jr. fell through from the roof to the floor.

In due time, Berry instituted suit against Hanover Insurance Company, the liability carrier of Chassaniol Roofing & Siding Company, under the Louisiana Direct Action Statute contending that the roofing company was negligent and that such negligence was the proximate cause of the accident. The original complaint was also filed against United States Fidelity and Guaranty Company as insurer of the general contractor, Quality Construction Company. The latter defendant pled the immunity of the general contractor under the Louisiana Workmen's Compensation Statute and its motion for summary judgment was granted.

Subsequently, the plaintiff filed a supplemental and amended complaint against Hanover Insurance Company as insurer of the "executive officers, directors, and/or stockholders" of the Chassaniol Roofing & Siding Company and against Lumbermen's Mutual Casualty Company as insurer of the "executive officers, directors and/or stockholders" of B & B Plumbing and Heating Company, Inc. Lumbermen's Mutual Casualty Company was already a party to the suit having filed an intervention to regain the monies which it had paid to Berry in the form of Workmen's Compensation weekly benefits and medical expenses.

The case was tried before a jury on January 15, 16, and 17, 1968. The District Court granted a motion for directed verdict in favor of the defendant Lumbermen's Mutual Casualty Company (also the intervenor) with regard to the appellee's action against it as the insurer of the "executive officers, directors and/or stockholders" of B & B Plumbing & Heating Company, Inc. The District Court denied a similar motion for directed verdict made by appellant Hanover Insurance Company. The jury ultimately returned a verdict in favor of appellee

and against Hanover Insurance Company in the amount of $90,000.

Appellant assigns three alleged errors of the District Court which appellant contends are grounds for reversal. First appellant contends there was error in failing to grant appellant's motion for a judgment notwithstanding the verdict. Second, appellant contends the District Court erred in allowing the plaintiff to call Frank Bell under cross examination as an adverse witness. Third, appellant contends that the District Court erred in denying appellant's motion for new trial.

Appellant cites three reasons why it contends the District Court committed error in failing to grant appellant's motion for judgment notwithstanding the verdict. Appellant contends that in denying appellant's motion for a directed verdict, the trial judge used an incorrect test in determining whether appellee's case should go to the jury; alternatively, appellant urges that appellee did not produce evidence sufficient to go to the jury. Finally, appellant contends that the plaintiff was solely negligent as a matter of law and for that reason there should have been a directed verdict in its favor.

■ The test employed to determine whether a case should be submitted to the jury or whether a directed verdict should be entered for the defendant is well settled. The recent case of Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969) is the last word of this Circuit on motions for directed verdict. The test employed in *Boeing* requires the District Court to consider all the evidence, but in the light and with all reasonable inferences resolved in favor of the party opposed to the motion. If after consideration of all the evidence, the District Court is of the opinion that the evidence is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion for directed verdict must be denied and the case submitted to the jury. See also: Issacs v. American Petrofina, 368 F.2d 193 (5th Cir. 1966); Liberty Mutual Insurance Co. v. Falgoust, et al, 368 F.2d 248 (5th Cir. 1967); Baron Tube Co. v. Transport Insurance Co., 365 F.2d 858 (5th Cir. 1966); Monsanto Chemical Co. v. Payne, 354 F.2d 965 (5th Cir. 1966); Turner v. Atlantic Coast Line Railroad Co., 292 F.2d 586 (5th Cir. 1961). We can find no evidence that the trial judge used an incorrect test in determining whether plaintiff's case should go to the jury. The trial judge felt that if there was any evidence which drew a factual issue as to whether or not the appellant's actions constituted negligence then the case should go to the jury.[1] The fairness in reasoning employed by the able trial judge was in accord with the test cited above for submission of a case to a jury.

Appellant's contention that the plaintiff did not produce evidence sufficient to go to the jury is also without merit. As to sufficiency of the evidence, the Court in *Boeing* held the following:

"A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question."

■ The sufficiency of the evidence required to submit a case to the jury is a matter of initial determination by the trial judge who must be guided by the rule in *Boeing* that if the evidence is of such character that reasonable men in an impartial exercise of their judgment may reach different conclusions, the case should be submitted to the jury. Boeing Co. v. Shipman, supra; M. H. Hogan v. United States, 325 F.2d 276 (5th Cir. 1963); Geddes v. Daughters of Charity of St. Vincent De Paul, Inc., 348 F.2d

1. Record p. 371.

144 (5th Cir. 1965); Isaacs v. American Petrofina, supra; 2. B. Barron and Holtzoff (Wright Ed.) Federal Practice & Procedure, § 1075; 5 Moore's Federal Practice, §§ 50–50.02 (2d ed). One need proceed no further than the testimony of Frank Roth, the carpenter called by plaintiff, to conclude that there was ample evidence relevant to the negligence of appellant upon which reasonable men could differ. Mr. Roth testified that he saw the roofers cover the hole, that he advised them that the hole should be cut out, and that the roofers failed to cut out the hole before he stopped work the afternoon before the accident. Further, there was sufficient evidence to go to the jury on the question of a hidden trap being created as the roofers admitted they placed three rolls of paper across the hole to secure the hole, one of which rolls fell through when Berry fell, thus a situation was created which appeared safe but which, when tested, gave way.

The final reason appellant contends that its motion for judgment notwithstanding the verdict should have been granted is that the evidence shows that as a matter of law the plaintiff was guilty of negligence. Appellant urges that the appellee necessarily had to have knowledge of the scuttle hole since he was working in close proximity to it when punching the holes on the inside ceiling, and that the law places a legal duty on one to avoid a possible hazard. It is sufficient to say that appellant's contentions amount to no more than conjecture and there is no positive evidence to indicate Berry knew of the existence of the hole. Frank Bell testified that while working with Berry he could not remember the scuttle hole being there, and that there was no light coming through the hole on the morning of the accident. Further, the witness Roth stated that after the roofers rolled the tar paper over the hole one could not tell a hole was there. As stated earlier, appellee testified that he had no memory of that day at all. The appellant's contention that Berry was guilty of negligence as a matter of law is clearly without merit.

The appellant's second assignment of error is that the District Court erred in allowing the appellee to call Frank Bell under cross examination. Appellant maintains that this aspect of the case is controlled by Soprano v. State Farm Mutual Auto Insurance Company, 246 La. 524, 165 So.2d 308 (1964) under the doctrine of Erie Railroad Company v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In the *Soprano* case the Louisiana Supreme Court held that the plaintiff could not cross examine the insured of the defendant-insurer under Article 1634 of the Louisiana Code of Civil Procedure where only the insurer had been sued under the Direct Action Statute. The Louisiana Court said in effect that the insured was not a party or incidental party to the suit and thus could not be called on cross examination under Article 1634 as a representative of the defendant.

We must again disagree with the appellant as we hold that the question of whether one is an adverse witness is a question of procedure rather than substance and thus is governed by federal and not state rules. Accordingly, we hold in line with our previous decisions of Degelos v. Fidelity and Casualty Company of New York, 313 F.2d 809 (5th Cir. 1963); and Maryland Casualty Company v. Kador, 225 F.2d 120 (5th Cir. 1955) that in a suit against a liability insurer under the Louisiana Direct Action Statute,[2] the plaintiff may call the insured as an adverse witness under F.R.Civ.P. 43(b).[3]

2. La.Stat.Ann.—Rev.Stat. Title 22, § 655.

3. Rule 43(b) "Scope of examination and cross examination. A party may interrogate an unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted or impeached by or

The appellant's final assignment of error relates to the District Court's denial of the appellant's motion for new trial. Appellant contends that the motion should have been granted because the District Court allegedly failed to charge the jury correctly on the issue of the creation of a hidden trap. The trial judge correctly charged the jury that "in considering whether or not the defendant's insured are negligent, consider also whether or not their actions constituted a hidden trap. Therefore, if work is left uncompleted, covered over in an unguarded state, it may constitute a hidden trap. Roofers are required to use reasonable care not to create a trap which could be expected to give way under the weight of a man on a roof to install plumbing." [4]

■ The appellant urges that the portion of the charge regarding leaving the work in an uncompleted state was contradictory and that it confused the jury. Read as a whole the charge does not appear confusing or contradictory as the trial judge was apparently explaining to the jury what *could* substitute a hidden trap; and was not stating that work left unguarded was *necessarily* a hidden trap.

■ Appellant next charges that its motion for new trial should have been granted because of the trial court's failure to give several of appellant's requested charges. Two of the charges appellant contends should have been given relate to the appellant's position that it is the general contractor who has the duty of protecting the employees of other contractors and that an independent contractor does not owe to the employees of other contractors any special duty to provide other contractors' employees with a safe place to work. To

have given these charges could have misled the jury into believing that appellant had no duty of care at all when in fact appellant had the duty of ordinary care plus the duty of not creating a hidden trap as the charge correctly stated. Further, the charge was given the jury that an independent contractor had no duty to warn the employees of other independent contractors of obvious dangers or dangers which should have been known. Thus, the lower court committed no error in this respect.

■ Finally, appellant maintains that a new trial should have been granted because of the failure of the District Court to give appellant's requested charge regarding alternative pathways. The instructions did contain a charge on contributory negligence and dangers that are known to be in one's path; therefore, appellant was not entitled to what in effect was a second instruction on contributory negligence. Additionally, the proposed charge of alternative pathways does not appear to be supported by competent evidence that Berry ever knew of the existence of the hole.

Reading the charge as a whole the trial judge gave adequate instructions on all issues raised by the evidence and the jury could not possibly have been confused as to what was meant. Texas and Pacific Railway Co. v. Jones, 298 F.2d 188 (5th Cir. 1962); Oliveras v. United States Lines Co., 318 F.2d 890 (2nd Cir. 1963); Logan v. Empresa Lineas Maritimas Argentinas, 353 F.2d 373 (1st Cir. 1965); Chicago & North Western Railway Co. v. Rieger, 326 F.2d 329 (8th Cir. 1964); Hansen v. Barrett, 186 F.Supp. 527 (D. Minn.1960). Finding no merit in any of appellant's assignments of error the judgment is affirmed.

on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief."

4. Record p. 613.