**J. WEINGARTEN, INC., Appellant,**

v.

**Ben Hirschel ANDERSON et ux., Appellees.**

**No. 7253.**

Court of Civil Appeals of Texas, Beaumont.

Sept. 23, 1971.

Rehearing Denied Oct. 14, 1971.

———◆———

Benckenstein & Norvell, Beaumont, for appellant.

Waldman & Smallwood, Beaumont, for appellees.

STEPHENSON, Justice.

This is a slip and fall case. Judgment was rendered for plaintiff on the jury verdict. The parties will be referred to here as they were in the trial court.

As we said in Swan v. Kroger Company, 452 S.W.2d 793 (Tex.Civ.App., Beaumont, 1970, error ref., n. r. e.), the law in this state is well settled as to the necessary allegations and proof in order to establish liability against the store operator for an injury received from a fall because of a foreign substance upon the floor. The landmark case is H. E. Butt Grocery Co. v. Johnson, 226 S.W.2d 501, 502 (Tex.Civ. App., San Antonio, 1949, error ref., n. r. e.), in which it is stated that a plaintiff must show:

"1. That the defendant put the foreign substance upon the floor, or,

"2. That the defendant knew the foreign substance was on the floor and wilfully or negligently failed to remove it, or,

"3. That the foreign substance had been upon the floor for such a period of time that it would have been discovered and removed by the defendant, had the defendant exercised ordinary care."

■ The parties agree there is no evidence that defendant put the foreign substance (in this case, oil) on the floor (in this case, a parking lot) or that defendant knew the foreign substance was on the floor and wilfully or negligently failed to remove it. Plaintiffs rely solely upon the basis that the foreign substance had been on the parking lot for such a period of time that it would have been discovered and removed by defendant, had the defendant exercised ordinary care. The jury answered the series of isues, based upon that premise, favorably to plaintiffs. Defendant's primary complaint is that there was no evidence in the record to support those findings. In passing upon these points of error, we look only to the favorable evidence supporting such findings. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

The evidence shows this incident occurred in the parking lot of the East Town Shopping Center in Orange, Texas, owned by defendant, J. Weingarten, Inc. Between 4:00 and 4:30 P.M., on a Saturday afternoon, plaintiff, Lillie Mae Anderson, went there in an automobile with her sister-in-law and children. As plaintiff got out of

the car she picked up the two-year-old child, turned, took a step or two, and slipped and fell. She lost her right shoe when she fell and when it was returned to her by her sister-in-law's son, she noticed "it was full of oil on the bottom of it, old sticky, dirty looking oil" which she wiped off and put the shoe back on her foot. She testified it was not fresh oil, "[i]t was dirty looking, greasy looking stuff. It was sticky, * * *" She said that she was hurting too badly to look in the parking lot for the oil that day, but returned two days later and found a big spot of oil where she fell.

Cal Myers was called as a witness by plaintiffs and testified to the following: He was employed as a part-time investigator for the law firm representing plaintiffs. He had retired from the army after twenty years' service. While in the army he was a maintenance officer for eight years, and shop supervisor for six years, and on seven different occasions had a huge parking lot to take care of. He was familiar with the problem of dripping crankcase oil on a surface similar to the Shopping Center. When asked to explain his opinion as to how oily surfaces can build up, he replied:

"Well, generally, from my experience, oil would drip onto the macadam, or black-top surface; dust and sand blowing down through the area would collect on this oil that had dripped. Now, of course some of the oil—because the macadam is real porous, it goes on into the macadam—but some of it remains on top and this dirt collects on top and it causes more or less a sealant on top of the macadam, and it prevents the next coat of oil that might drip there from going through the porous macadam, and then that again collects more dirt and more dust and sand that is blown in through the air, and that is about the way it collects on the top of the macadam."

These questions and answers followed:

"Q Do you have an opinion as to approximately how long it would take before this process you have described built up to form a slippery surface?

"A Well, it would have to be a period of a few days at least, because oil being of a certain consistency other than water, it takes time to flow, and before it will accumulate any amount of dust and dirt through the air, like I say, it would be solely dependent upon what air you are in, whether or not you've got high winds blowing dust and dirt, but it would have to be a matter of at least a week of accumulation to amount to anything.

*    *    *    *    *    *

"Q Does the accumulation of an oily spot such as you have described here to the Jury with time become slippery?

"A Oh, definitely. That was one of the reasons why we had to pick it up, because the way that the sand—of course like I said before, the sand and dust gets mixed up with the oil, and rolling over it it just packed it just enough to cause the surface of it to be pretty slick.

*    *    *    *    *    *

"Q Now, as to whether or not a particular accumulation of oil, crankcase oil, as you have described on the parking lot was actually slippery or not slippery, this would depend somewhat upon the age that it has been there, wouldn't it, or would it?

"A Not really. To some extent it would, because if it has been there longer, rolling over it would cause it to be a smoother surface and causing it to be slicker. It would depend upon the traffic over it more than it would probably with age.

*    *    *    *    *    *

"Q What I am trying to find out, Mr. Myers, is would the more accumulation, or drippings, of oil that have accumulated on a spot on the top of a macadam surface that has not been treated or removed; would the more

oil you get on there, the more drippings, the more slippery it would be, or not?

"A In my opinion, yes, it would be."

The foregoing resume and quotations contain all of the evidence in this record on the question before us. It is apparent that no witness was produced to show the oil had been seen on the parking lot for any length of time and the plaintiffs were compelled to establish this necessary element in their case by circumstantial evidence. A somewhat similar case is reflected by an earlier opinion of this court in S. H. Kress & Co. v. Selph, 250 S.W.2d 883, 890 (Tex.Civ.App., Beaumont, 1952, error ref., n. r. e.) The plaintiff in the Selph case testified she fell in front of the candy counter when she stepped on a piece of candy. She examined both her shoe and the place where she fell and testified the candy had been stepped on before she did, and had brush marks on it. The evidence also showed that defendants used brooms to sweep the floor. We quote the following from that opinion:

"Whether a dangerous substance has been upon the floor of the store long enough for it to have been discovered and removed before the plaintiff is injured had the storekeeper been exercising due care toward his patrons is a question of fact which may be proved by circumstances as are other facts, and the appearance and condition of the substance causing the plaintiff to fall and of the surrounding area of the floor may be significant circumstances * * *."

* * . * * * *

" * * * The appearance of the candy showed that it had been·trod upon by others, and that the porter had actually passed over it with his broom * * *."

In Goodson v. Southland Corporation, 454 S.W.2d 823 (Tex.Civ.App., El Paso, 1970, error ref., n. r. e.), the plaintiff testified that after she fell she observed a brownish substance on the floor, part of which was sticky and part just wet. The jury found the substance to be an Icee which is a flavored carbonated ice product sold in paper cups. Plaintiff in the Goodson case relied upon a jury finding that the substance had been on the floor a sufficient period of time for defendant, in the exercise of ordinary care, to have discovered it. The evidence on the length of time came from a witness who testified that she had worked with an Icee machine for a year and a half, and she knew it would take six minutes for an Icee to melt and approximately thirty minutes for one to dry to a sticky substance. The El Paso Court of Civil Appeals held this evidence supported the jury finding.

In Isaacs v. American Petrofina (5th Cir. 1966), 368 F.2d 193, plaintiff slipped on some oil in a service station. The evidence showed the oil must have been on the driveway at least twenty minutes and it did not come from the car the plaintiff was riding in and no other cars were around during the time plaintiff was in the station. That court reversed an instructed verdict for defendant, holding the evidence raised a question of fact for the jury to determine as to whether the oil had been on the floor for such a period of time that it would have been discovered by defendant in the exercise of ordinary care.

H. E. Butt Grocery Company v. Marroquin, 466 S.W.2d 837, 838 (Tex.Civ.App., San Antonio, 1971, no writ), is a venue case. The Court of Civil Appeals reversed an order of the trial court overruling defendant's plea of privilege. It was held by the appellate court that there was no evidence of probative force to support an implied finding that the foreign substance had been on the floor for such a period of time that defendant acting with ordinary care would have discovered it. In that opinion a resume of the evidence was given as follows:

"Plaintiff was the only witness at the hearing. She testified that she fell because the floor was wet with fruit juice,

and it was very slippery. She assumed it was fruit juice because there were bottles of juice nearby, and there was broken glass in the wet place. She did not testify that she identified the broken container. She testified that, 'It must have been there quite awhile because it is already sticky.' On cross-examination, she admitted that she didn't know what was on the floor, 'I only saw that it was wet and sticky.' "

The "no-evidence" points are overruled. There is more than a scintilla of evidence to support the jury findings when we construe the evidence and reasonable influences in the most favorable light in support of such findings.

 Defendant has a series of points of error contending the jury findings are contrary to the great weight and preponderance of the evidence. In passing upon these points we consider the entire record. These points of error are sustained.

Defendant's store manager testified plaintiff called him about 7:00 P.M. the afternoon she fell. He went to the place she indicated she had fallen and found a broken milk bottle, but no oily substance. In a written statement admitted in evidence, made about a month after this incident, plaintiff stated she slipped on a piece of glass and did not mention oil. Plaintiff's family doctor testified plaintiff came to him for treatment and in the history he took she told him she stepped on something she thought was a piece of glass and slipped. All of the evidence shows she cut her big right toe in the accident. Plaintiff was the only witness who gave the testimony that oil was on her shoe when it was returned to her. Neither the sister-in-law who picked up the shoe nor the son who returned it to plaintiff was called as a witness. Plaintiff's testimony that the oil was old and dirty could be construed to mean it had been in the automobile from which it dripped for a long time, and not give any indication as to how long it had been on the parking lot surface. Cal Myers's testimony could be construed to mean that the build-up of oil and sand and dust as described by him in his hypothetical case would become more slippery with time, but not as a statement that if it had just dripped from an automobile it would not be slippery. In view of all of this evidence, we conclude these findings by the jury to be clearly wrong and manifestly unjust.

The remaining points of error are found to be without merit and are overruled.

Reversed and remanded.