STOKER, Judge.
Plaintiff, Robert Breithaupt, Jr., brought this tort action against Luke Sellers to recover damages for personal injuries sustained by plaintiff when he was shot. Plaintiff also filed suit against Houston General Insurance Company seeking damages for the same injury.[1] At the trial of these consolidated cases, following the presentation of plaintiff’s case, defendant Sellers moved for a directed verdict. The trial judge directed a verdict in favor of defendants holding that plaintiff had been contrib-utorily negligent. From this adverse judgment, plaintiff has perfected this appeal.
The issue in this appeal is whether the trial court erred in a jury trial in directing a verdict in favor of defendant Luke Sellers.
The facts reveal that on November 30, 1977, at approximately 2:00 p. m. plaintiff and a companion, Grayson Walpole, went deer hunting in an area off the Placid Oil Road in LaSalle Parish. Upon arriving at the hunting area, plaintiff and his companion separated. At approximately 5:30 p. m., plaintiff began walking back to the truck, terminating his hunting. While walking toward his truck he saw a man in the distance. Moments after viewing the figure through his rifle scope, appellant was shot by the man. Plaintiff later identified defendant Sellers as the person who shot him.
Plaintiff assigns as error the trial court’s granting of a directed verdict in favor of the defendants.
Directed verdicts are provided for by the Louisiana Code of Civil Procedure, article 1810. Directed verdicts are a relatively new procedure in Louisiana, the device having been added in 1977. Article 1810 of the Code of Civil Procedure, which incorporates the directed verdict into Louisiana Law, reads in pertinent part as follows:
A. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for *1259 a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
This Court of Appeal recently had occasion to consider this statutory provision and adopted a standard for directed verdicts in Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir. 1979). As the source of our directed verdict statute, LSA-C.C.P. art. 1810A, was the Federal Rules of Civil Procedure, we adopted the standard established in the federal courts which is as follows:
On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence — not just that evidence which supports the non-mover’s case — but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.
The ground upon which the trial judge directed a verdict in favor of defendant Sellers was that plaintiff was guilty of contributory negligence in not wearing “hunter’s orange,” and this negligence was a cause of his being shot. Thus, his claim was barred by his contributory negligence.
The narrow question presented in this case is could reasonable persons, viewing all the evidence in a light most favorable to plaintiff, have reached different conclusions as to whether plaintiff was contributorily negligent.[2]
Defendant contends that plaintiff was contributorily negligent because he failed to wear “hunter’s orange,” as required by LSA-R.S. 56:143 which provides,
Any person hunting deer shall display on his head or chest, and/or back a total of not less than four hundred square inches of material of daylight fluorescent orange color known as “Hunter orange”. These provisions shall not apply to persons hunting deer on property which is privately owned and legally posted,[3] or to archery deer hunters except when bow and arrow are used to hunt deer on wildlife management areas where a gun season for deer is in progress.
Whoever violates the provision of this section shall be fined not more than $100 or imprisoned for not more than ninety days, or both.
The statute requires persons to wear “hunter’s orange” while deer hunting. A person deer hunting without wearing hunter’s orange would be subjecting himself to an unreasonable risk of harm. Plaintiff testified that he had terminated his deer hunting prior to being shot.
The most difficult question to be faced here is the question of causation. What role did the failure of plaintiff to wear “hunter’s orange” have in causing him to be shot. There is no allegation or contention that plaintiff was intentionally shot. In defendant’s invocation of the defense of contributory negligence plaintiff is charged with the violation of the criminal statute, LSA-R.S. 56:143, quoted above. We approach this case and analyze it in the manner prescribed in Weber v. Phoenix Assurance Co. of N.Y., 273 So.2d 30 (La.1973).
*1260 Plaintiff violated the statute. The statute was unquestionably designed to afford him, as a hunter, protection from the risk of being shot by other hunters who might mistaken him for game. Under the circumstances, plaintiff’s failure to wear the prescribed fluorescent orange clothing, not only on his head, but on his “chest and/or back,” was a cause-in-fact of his being shot. Considering the duty-risk relationship, plaintiff’s failure was a legal cause of the accident. The statute violated by him was designed to protect him from the very risk incurred.
We do not believe we are assuming too much in believing plaintiff would not have been shot had he been properly attired. The evidence clearly established conditions of visibility such that, had plaintiff been attired with “hunter’s orange”, any hunter would have noted this fact. We feel that we can assume that reasonable persons would have responded properly by concluding that plaintiff was a human being and not a game animal—a deer. Such a reasonable person would not have fired at plaintiff. The assumption that whoever shot plaintiff was a reasonable person is warranted because we are dealing with the question of plaintiff’s negligence. If plaintiff had been clothed in “hunter’s orange” but had nevertheless been shot, the inquiry then would be whether the shooter acted unreasonably, and contributory negligence on plaintiff’s part would not have been a factor.
We are of the opinion that the reasonable inferences most favorable to plaintiff are (1) that the conditions of visibility were such that, (2) with the use of “hunter’s orange”, (3) a reasonable person would not have fired upon plaintiff. We feel these inferences point so strongly and overwhelmingly in favor of plaintiff’s contributory negligence, which would bar recovery by him, that reasonable persons could not arrive at a contrary verdict. Therefore, we affirm the action of the trial court in directing a verdict for defendant.
Plaintiff strongly urges that a jury issue existed because the shooting incident occurred at a time which very probably was after legal hunting hours. If this was so, plaintiff urges, he was not required by law to wear “hunter’s orange” at the time of the shooting. We do not consider the argument valid. The “hunter’s orange” statute applies to “any person hunting deer”. It does not apply to persons only while they are legally hunting deer and not apply to persons who are hunting illegally after the prescribed hours. We interpret the word hunting broadly. As stated above, plaintiff had started walking back to the truck which meant that he was in the act of concluding his active hunting. However, the “hunter’s orange” statute is not like the proverbial “king’s x” in children games or a time out in athletic contests which suspends the games. Hunting obviously requires going into and coming out of the hunting area. Consequently, during periods when one may be approaching or leaving a deer stand, for example, he needs the protection of “hunter’s orange” just as much as when he and other hunters are actively ready and seeking an opportunity to shoot at deer. Perhaps the hunter is in greater need of protection at such times, as he may be walking and moving as plaintiff was.
For the foregoing reasons we do not regard as relevant, the fact that the shooting incident may have taken place a few minutes after the close of legal hunting hours. Therefore, we affirm the judgment of the trial court. All costs of this appeal shall be borne by plaintiff-appellant.
AFFIRMED.
DOMENGEAUX, J., dissents and assigns written reasons.

. The case against Houston General Insurance Company, Number 7215 on the docket of this court, has been severed from this action against defendant Luke Sellers. The appeal in the case of Houston General Insurance Company has been separately docketed and will be heard and considered as a separate case.

. Under federal decisions directed verdicts may be granted where the plaintiffs case discloses a valid defense of contributory negligence. Thompson v. Illinois Central R. Co., 423 F.2d 1257 (6th Cir. 1970) and Hanover Insurance Company v. Berry, 416 F.2d 279 (5th Cir. 1969).

. The evidence, including testimony of plaintiff himself, established that the land on which plaintiff was hunting, although privately owned, was not posted. (Tr. 367 and 673)